IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JEREMY L.,[1]

                Plaintiff,

     v.

COMMISSIONER, Social Security
Administration,

                Defendant.
_____

Case No. 6:20-cv-00739-MK

**OPINION
AND ORDER**

**Kasubhai,** United States Magistrate Judge:

Plaintiff Jeremy L. seeks judicial review of the final decision of the Commissioner of the

Social Security Administration ("Commissioner") denying his applications for Social Security

Child Disability benefits under Title II of the Social Security Act (the "Act"). This Court has

jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). All parties

have consented to allow a Magistrate Judge to enter final orders and judgment in this case in

accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 16.

For the reasons that follow, the Commissioner's final decision is REVERSED, and this case is

REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and last name initial of non-government parties and their immediate family members.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for Child Disability benefits in August of 2016, alleging a disability onset date of May 16, 2012.[2] Tr. 163. His application was denied initially and upon reconsideration. Tr. 63–74, 76–87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a supplemental hearing was ultimately held in March of 2019. Tr. 99–101, 36–61. In April of 2019, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. Tr. 12. The Appeals Council denied Plaintiff's request for review in April of 2020, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## FACTUAL BACKGROUND

Plaintiff was 14 years old on his alleged onset date. Tr. 18. Plaintiff left high school before completing the tenth grade and has no past relevant work experience. Tr. 45, 29. Plaintiff alleged disability based on anxiety, bipolar, polycystic ovarian syndrome, and depression. Pl.'s Op. Br. 2, ECF No. 12.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a

---

[2] "Tr." citations are to the Administrative Record. ECF No. 11.

whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The claimant has the initial burden of proof to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*;

20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff met the insured requirements of the Act and had not engaged in substantial gainful activity since the alleged onset date. Tr. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: tethered spinal cord with surgery; obesity; depression, bipolar disorder, anxiety, panic disorder, as well as post-traumatic-stress disorder ("PTSD"); and gender dysphoria. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination thereof that met or equaled a listed impairment. *Id*. The ALJ found that Plaintiff had the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) except he can
> perform entry-level work involving only two-to-three step

> instructions and tasks, no interaction with the public, no teamwork activities, and only occasional interaction with supervisors and coworkers.

Tr. 21.

At step four, the ALJ found that Plaintiff had no past relevant work. Tr. 29. At step five, the ALJ found, in light of Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers such that Plaintiff could sustain employment despite his impairments. Tr. 29. The ALJ thus found Plaintiff was not disabled within the meaning of the Act. Tr. 30.

## DISCUSSION

Plaintiff asserts that remand is warranted for three reasons. First, he argues the ALJ erred when he declined to admit the impairment questionnaire completed by an examining doctor into the record evidence. Pl.'s Op. Br. 1, ECF No. 12. Second, Plaintiff asserts that the ALJ erred by failing to provide legally sufficient reasons for discounting medical source opinions. *Id*. Finally, Plaintiff asserts that the ALJ erred by improperly rejecting his subjective symptom testimony. *Id*. The Court addresses each argument in turn.

## I.    Functional Limitations Questionnaire

Plaintiff challenges the ALJ's exclusion of an impairment questionnaire completed by Dr. David Freed, Ph.D. Pl.'s Op. Br. 4. Plaintiff attended a psychological evaluation with Dr. Freed on Wednesday, March 20, 2019. Tr. 896. Plaintiff's representative timely notified the ALJ that Plaintiff attended the evaluation and expected to receive the report on March 25, 2019. Tr. 265. On March 22—three days earlier than anticipated in Plaintiff's timely notification—Plaintiff's representative submitted Dr. Freed's report to the ALJ. Tr. 266.

The report contained two parts: a narrative portion and a questionnaire. Tr. 15–16. The narrative portion of the report was dated March 20, 2019, the day of the evaluation. *Id.* The questionnaire, however, was dated March 22, 2019. *Id.* The ALJ admitted the narrative portion of the report but declined to admit the impairment questionnaire. *Id.* The ALJ reasoned that he excluded the questionnaire because "it didn't exist when time ran out," and because "it was not included" in the five-day notice letter from Plaintiff's representative. *Id.* The Commissioner asserts that the ALJ properly excluded the questionnaire because Plaintiff failed to specifically identify Dr. Freed's questionnaire in the "five-day letter" Plaintiff's representative submitted to the ALJ. Def.'s Br. 3–5. And that even if the ALJ did err, the error was harmless because the ALJ properly rejected Dr. Freed's opinion. *Id.*

### A. The Five-Day Rule

The Social Security regulations provide:

> Each party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 404.1512, no later than 5 business days before the date of the scheduled hearing. If you do not comply with this requirement, the administrative law judge may decline to consider or obtain the evidence, unless the circumstances described in paragraph (b) of this section apply.

20 C.F.R. § 404.935(a) (emphasis added). 20 C.F.R. § 404.935(b) provides a number of circumstances under which a claimant who fails to meet the five-day deadline should nevertheless have their evidence admitted.

Plaintiff contends that the letter he sent to the ALJ satisfied the five-day notice requirement for including the questionnaire from Dr. Freed's assessment. Pl.'s Op. Br. 7. The Commissioner contends that the letter failed to specifically identify the questionnaire portion of Dr. Freed's report to satisfy the five-day requirement. Def.'s Br. 4. Plaintiff's letter stated: "On March 20, 2019, [Plaintiff] attended a psychological evaluation with Dr. Freed. Our office has

made arrangements with Dr. Freed to receive his report on March 25, 2019. I will submit the report upon receipt." Tr. 265. A plain reading of the regulation's text, as well as a review the Agency's stated purpose in enacting the regulation, demonstrates that Plaintiff is correct.

Social Security Ruling ("SSR") 17-4p provides that for a claimant to satisfy their obligation to "inform" the agency of untimely written evidence, the claimant "must provide information specific enough to identify the evidence (source, location, and treatment) and show that the evidence [is relevant]." C.F.R. § 404.935(a). SSR 17-4p, 2017 WL 4736894, at *3.

Following the five-day notice letter, Plaintiff's representative sent the ALJ Dr. Freed's report, which included the narrative portion as well as the questionnaire. The five-day notice letter indicated that Plaintiff's exam with Dr. Freed would produce a "report," which, as commonly referenced in Social Security disability applications, includes both a narrative portion as well as a functional questionnaire as is standard practice for psychological evaluations. *See, e.g., Kirkruff v. Berryhill*, No: 6:15-cv-02274-AA, 2017 WL 1173910, at *7 (D. Or. Mar. 28. 2017); *Hart v. Astrue*, 2008 WL 2367098, at *6 (W.D. Wash. June 9, 2008). The narrative portion and the questionnaire were sent to the ALJ together on the same date, indicating that they were indeed part of the same "report." This was sufficient to "identify the evidence (source, location, and treatment) and show that the evidence [is relevant]." C.F.R. § 404.935(a).

Furthermore, the announcement of the final rule by the Social Security Administration offers guidance on the purpose of the five-day rule and the role that the "inform option" in 20 C.F.R. § 404.935(a) plays in furthering its purpose. *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 FR 90987-01, 90989-92, 2016 WL 7242992 (Dec. 16, 2016). According to the SSA, "the 5-day requirement . . . allows [our hearings] to work more effectively by ensuring that ALJs have a more complete evidentiary

record when they hold hearings." *Id.* at *90989. The SSA further states that "our final rule contemplates some circumstances may warrant the introduction of new evidence at or after the hearing, and includes an 'inform' option . . . to accommodate these circumstances." *Id.* at *90991.

The five-day rule's stated purpose was to ensure that ALJs have a complete evidentiary record for the hearing. The ALJ here unquestionably did; he received both parts of Dr. Freed's report at the same time, days before the hearing. Then, contrary to the rule's stated purpose, the ALJ made the record less complete by erroneously bifurcating the report and the questionnaire and refusing to admit the latter into the record. As the SSA explains, the "inform option" of § 404.935(a) was included to soften the severity of the five-day rule and admit relevant evidence that is otherwise unavailable five days before the hearing. The ALJ therefore erred by failing to admit Dr. Freed's questionnaire into the record.

### B. Harmless Error

The Commissioner next contends that the ALJ's error was harmless because the "questionnaire could not have changed the ALJ's analysis in any meaningful way" given that the ALJ gave Dr. Freed's psychological evaluation only partial weight. Def.'s Br. 5, ECF No. 14. The Court may not reverse an ALJ's decision on account of an error that is harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). To determine if substantial evidence exists to support the ALJ's decision, a court reviews the administrative record as a whole, "weighing both the evidence that supports and detracts from the ALJ's conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

Additionally, "[i]n Social Security cases the ALJ has a special duty to fully and fairly develop the record and to insure that the claimant's interests are considered." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (citation and quotation marks omitted).

Here, the ALJ excluded a questionnaire that should have been admitted. Therefore, the ALJ failed to fulfill his duty to fully and fairly develop the record. As a result, the Court is unable to review the administrative record as a whole to weigh both the evidence that supports and detracts from the ALJ's conclusion because the Court is unaware of the contents of Dr. Freed's questionnaire. Without a fully developed record, the Court is unable to determine wither the ALJ's decision was supported by substantial evidence. The ALJ's failure to admit the entirety of the report was therefore not harmless.

## II.    Medical Opinion Evidence

Plaintiff contends that the ALJ improperly assessed the medical evidence in the record. Pl.'s Op. Br. 9–17. The ALJ is responsible for resolving conflicts in the medical record, including conflicting doctors' opinions. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. §§ 404.1527, 416.927.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Where a doctor's opinion is contradicted, however, the ALJ must provide "specific, legitimate reasons" for discrediting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). An ALJ can meet this burden by "setting

out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quotation omitted).

**A. David Freed, Ph.D.**

Dr. Freed performed a psychological evaluation of Plaintiff in March 2019. Tr. 896. Dr. Freed's evaluation consisted of reviewing records, interviewing Plaintiff, and conducting clinical diagnostics. *Id.* Dr. Freed's written narrative of the evaluation indicated that Plaintiff "would have difficulty maintaining a daily work routine and interacting appropriately with co-workers or supervisors"; that Plaintiff had a moderate impairment in recent memory; and that Plaintiff "would struggle to learn and remember work procedures and policies." Tr. 902.

The ALJ assigned Dr. Freed's opinions partial weight. Tr. 27. The Commissioner argues that the ALJ properly rejected Dr. Freed's opinion because (1) it was internally inconsistent, (2) it was inconsistent with Plaintiff's activities of daily living, and (3) Plaintiff improved with treatment. Def.'s Br. 5, ECF No. 14.

The Commissioner asserts that Dr. Freed's findings that Plaintiff had a moderate impairment in recent memory and that Plaintiff would have difficulty maintaining a work routine and interacting with supervisors or co-workers conflicted with the doctor's findings that Plaintiff was "appropriately groomed, spoke fluently, was able to count and recite basic information, and was cooperative and motivated" and that Plaintiff scored in the 58th percentile on an IQ test.

An inconsistency within a doctor's opinion can constitute a specific and legitimate reason to reject it. *See Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (explaining that internal contradiction is a specific and legitimate reason for rejecting a treating physician's opinion). Further, the more consistent the opinion is with the evidence as a whole, the greater weight the opinion should be accorded. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

The ALJ here, however, failed to identify an actual inconsistency. Plaintiff's presentation at medical appointments with appropriate grooming and the ability to articulate basic medical information in a cooperative manner does not in any way conflict with the doctor's finding that Plaintiff would struggle maintain normal work routines and appropriate interactions with others. *Compare* Tr. 27, *with* Tr. 902. Further, Plaintiff's IQ score does not conflict with his well-documented memory impairments nor his ability to interact with coworkers, which are entirely consistent with Dr. Freed's learning disability diagnosis. Finally, Plaintiff's social anxiety is well documented throughout the record.

The ALJ's rejection of Dr. Freed's medical opinion as internally inconsistent fails for lack of specificity. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 n.2 (9th Cir. 2006) (noting that without a "reference to the record" the court was left to speculate as to the ALJ's reasoning). As the Ninth Circuit has explained, to meet the specific and legitimate standard required to reject a contradicted doctor's opinion, an ALJ "must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citation omitted); *see also Beckett v. Comm'r, Soc. Sec. Admin.*, No. 3:09-cv-01052-JO, 2011 WL 4006644, at *2–3 (D. Or. Sept. 6, 2011) ("The Ninth Circuit repeatedly has explained that conclusory reasons will not justify an ALJ's rejection of a medical opinion[.]") (citation and quotation marks omitted). The ALJ failed to do so here.

The Commissioner next asserts that Dr. Freed's opinion was inconsistent with Plaintiff's activities of daily living. Def.'s Br. 6. Inconsistency between a doctor's opinion and a claimant's daily activities can constitute a specific and legitimate reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citation omitted). When assessing whether a

claimant's reported activities are inconsistent with a provider's opinions, however, an ALJ errs where they fail to base such a determination on a holistic review of the record. *See id.* ("[A] holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities.").

The ALJ failed to take such a holistic view of the record here. The Commissioner asserts that Plaintiff's ability to complete basic activities, including cooking for himself, "do[ing] at least some basic chores," and "maintaining social connections online and over the phone" daily contradicts Dr. Freed's findings of Plaintiff's social and functional limitations. Def.'s Br. 6.

The Commissioner's argument fails for at least two reasons. First, the ALJ did not provide these specific activities as a justification for discounting Dr. Freed's opinion. Tr. 27. That is reason alone to reject the argument. *See Bray v. Comm 'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."). Further, even if the ALJ had connected the dots, such minimal activities are insufficient to contradict Dr. Freed's assessment and are therefore not a specific and legitimate reason to reject the opinion. *See Ghanim*, 763 F.3d at 1162 (holding that the ability to complete "some basic chores and occasionally socialize[]" was not a specific and legitimate reason to discount a doctor's opinion where a "holistic review of the record" showed the claimant "relied heavily on his caretaker, struggled with social interactions, and limited himself to low-stress environments").

Finally, the Commissioner asserts that Dr. Freed's opinion was inconsistent with Plaintiff's improvement through treatment. Def.'s Br. 6. The Commissioner again relies on portions of the record that the ALJ did not specifically identify, and the Court may not affirm on

such grounds. Def.'s Br. 6–7. In any event, the Ninth Circuit has repeatedly reiterated that ALJ's

should exercise caution relying on purported improvement in the mental health context:

> As we have emphasized while discussing mental health issues, it is
> error to reject [evidence] merely because symptoms wax and wane
> in the course of treatment. Cycles of improvement and debilitating
> symptoms are a common occurrence, and in such circumstances it
> is error for an ALJ to pick out a few isolated instances of
> improvement over a period of months or years and to treat them as
> a basis for concluding a claimant is capable of working.

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). While the Commissioner highlights

isolated incidents where Plaintiff experienced brief, temporary symptom relief, the bulk of the

medical evidence shows Plaintiff experienced serious depressive symptoms, including: suicidal

thoughts (Tr. 67, 275, 330, 517); anxiety (Tr. 296, 409, 444); sleeplessness (Tr. 294, 296, 529);

restlessness (Tr. 524, 529); isolation (Tr. 435, 511, 517); and manic behavior (Tr. 530, 740). As

such, Plaintiff's purported improvement was not a legally sufficient reason to reject Dr. Freed's

opinion.

## B.  Darcy Shearer, LPC

Darcy Shearer served as Plaintiff's long-term counselor. Under Social Security Ruling

("SSR") 06-03p, which was in effect at the time that Plaintiff filed his claim, "acceptable

medical sources" include licensed physicians; licensed or certified psychologists; licensed

optometrists; licensed podiatrists; and qualified speech-language pathologists. *See* 20 C.F.R. §§

404.1513(a), 416.913(a) (effective September 3, 2013 to March 26, 2017).[3]

---

[3] For claims filed on or after March 27, 2017, certain health care providers that were previously
considered "non-acceptable" under SSR 06-03p (rescinded) now qualify as acceptable medical
sources. *See* 20 C.F.R. §§ 416.902, 404.1502. References to 20 C.F.R. §§ 404.1513(a) and
416.913(a) refer to the regulation in effect from September 3, 2013, through March 26, 2017.

Nurse-practitioners, physicians' assistants, therapists, and counselors, among others,
however, are considered "other" non-acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a),
404.1513(d). Nevertheless, "depending on the facts of the case, and after applying the factors for
weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical
source' may outweigh the opinion of an 'acceptable medical source,' including the opinion of a
treating source." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); SSR 06-03p, at *5. This is because
"other sources" may have information "based on a special knowledge of the individual and may
provide insight into the severity of the impairment(s) and how it affects the individual's ability to
function." SSR 06-03p, at *2 (emphasis added). *See also* 20 C.F.R §§ 404.1527(c)(2), 416.927(c)
(explaining that treating providers "bring a unique perspective to the medical evidence that
cannot be obtained from the objective medical findings alone" and may be assigned "controlling
weight").

　　　To reject such testimony, an ALJ must provide "reasons that are germane to each
witness." *Rounds v. Comm'r*, 807 F.3d 996, 1007 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at
1114 (remaining citation omitted)). Further, the reasons provided must also be "specific." *Taylor
v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Bruce v. Astrue*, 557
F.3d 1113, 1115 (9th Cir. 2009)).

　　　Plaintiff saw LPC Shearer regularly from 2015 through 2019. Tr. 693–543, 693–815. In
her opinion, LPC Shearer indicated that Plaintiff has severe limitations in several areas,
including: understanding and remembering detailed instructions; maintaining regular attendance;
being punctual within customary tolerances; sustaining ordinary routines without special
supervision; working in coordination with others; making simple work-related decisions;
completing a normal workday and workweek without interruptions; performing at a consistent

pace without an unreasonable number of breaks; interacting with the general public; traveling in unfamiliar places or using public transportation; and setting realistic goals or making plans independently of others. Tr. 899–90.

LPC Shearer also indicated that Plaintiff has moderately severe limitations in several areas, including: remembering locations and work-like procedures; carrying out detailed instructions; maintaining attention and concentration; performing activities within a schedule; accepting instructions and responding appropriately to criticism from supervisors; maintaining socially appropriate behavior; adhering to basic standards of cleanliness; and responding appropriately to changes in work settings. *Id.*

The ALJ assigned LPC Shearer's opinion little weight. Tr. 27. The ALJ discounted the opinion on the grounds that the record shows LPC Shearer "significantly overstate[d] [Plaintiff's] cognitive and social limitations." *Id.* The Commissioner argues that this was a sufficiently germane reason to reject a counselor who treated Plaintiff for over four years. Def.'s Br. 8.

The ALJ's reasoning fails because he offered no explanation as to what specific evidence in the record showed that LPC Shearer significantly overstated Plaintiff's limitations. *See Taylor*, 659 F.3d at 1234 (requiring ALJs to provide "specific" reasons for rejecting lay testimony). The ALJ again referenced the identical string citation that he used to reject Dr. Freed's opinion without any explanation of how that evidence contradicted LPC Shearer's opinion. That was insufficient. The ALJ therefore failed to identify a specific, germane reason to reject LPC Shearer's opinion.

In sum, the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Dr. Freed as well as the opinion of LPC Shearer.

### III.    Subjective Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected his subjective symptom testimony. Pl.'s Op. Br. 17. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion [that] the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p[4] provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[4] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p, *available at* 2016 WL 1119029.

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

The ALJ rejected Plaintiff's subjective symptom testimony on the grounds that while Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of the symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 23.

The Commissioner asserts that the ALJ properly rejected Plaintiff's subjective symptom testimony because (A) the objective evidence in the medical file; and (B) Plaintiff's statements conflicted with the severity of his alleged limitations.

### A. Objective Medical Evidence

As noted, the Commissioner asserts that the ALJ properly discounted Plaintiff's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 9, ECF No. 14. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at [their] hearing do not comport with objective medical evidence in [their] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, an ALJ may not cherry-pick isolated instances of improvement when the record as a whole reflects longstanding disability. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Moreover, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.") (internal quotation marks and brackets omitted).

Regarding Plaintiff's mental impairments, the Commissioner directs the Court to the opinions of two non-examining doctors: Irmgard E. Friedburg, Ph.D., and Sergiy Barsukovs, Psy.D. Def.'s Br. 9. The doctors found, *inter alia*, that Plaintiff showed only moderate limitations in concentration, persistence, and maintaining pace for simple two-to-three step tasks. *See id.* (citing Tr. 71, 85).

The Commissioner also directs the Court to the opinion of Dr. Freed. Def.'s Br. 9. The Commissioner highlights that Dr. Freed found that Plaintiff demonstrated only moderate memory impairments after completing various cognitive tests. *Id.* While Dr. Freed did find that Plaintiff had a moderate memory impairment, in the same report, Dr. Freed found that Plaintiff would have difficulty maintaining a daily work routine and interacting appropriately with co-workers and supervisors, found that Plaintiff had a learning disability involving spelling, and diagnosed Plaintiff with Minor Neurocognitive Disorder. Tr. 901–02.

Other than repeating the ALJ's summary of the medical evidence, however, the Commissioner fails to articulate how those doctors' observations conflicted with Plaintiff's subjective complaints and therefore falls short of the requisite clear-and-convincing standard. *See Smolen*, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.") (citation omitted).

Moreover, the Ninth Circuit has rejected reliance on similar reports. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (rejecting an ALJ's reliance of the claimant's "good eye contact, organized and logical thought content, and focused attention" because "[t]hese observations of cognitive functioning during therapy sessions [did] not contradict [the claimant's] reported symptoms of depression and social anxiety"). As such, the objective

medical record was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### B. Plaintiff's Statements

The Commissioner next asserts that the ALJ properly discounted Plaintiff's allegations because Plaintiff's "own statements" regarding his activities conflicted with his allegations. Def.'s Br. 9. The Commissioner highlights several self-reported activities that purportedly conflict with Plaintiff's allegations that he has difficulties with talking, memory, task completion, concentration, understanding and following instructions, and getting along with others. Def.'s Br. 9–10 (citing Tr. 209).

An ALJ may use activities of daily living to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The Commissioner asserts Plaintiff's ability to talk with friends on the phone and computer, play video games, watch TV, go shopping, and take his therapy dog for walks undermined Plaintiff's testimony relating to his mental health impairments. Def.'s Br. 10. The Commissioner also asserts that the statements from Plaintiff's mother about Plaintiff's ability to "cook all kinds of things" and Plaintiff's ability to do household chores and pay bills, even though he "doesn't," undermined Plaintiff's testimony. *Id.* The Commissioner, however, overstates many of Plaintiff's limited activities and fails to identify any meaningful

inconsistencies.

For example, although Plaintiff testified that he prepares meals, that preparation consisted largely of simple meals such as sandwiches and spaghetti. Tr. 206. Plaintiff also testified that his mother prepares a lot of his meals. Tr. 206. Additionally, although Plaintiff's mother testified that Plaintiff "can do cleaning, laundry, & household chores but doesn't," Plaintiff testified that he cannot help around the house because he gets "overwhelmed easily" and has anxiety attacks. Tr. 217, 46–47. Finally, though Plaintiff leaves the house with his mother to go grocery shopping and to his counseling appointments, he testified that he goes out in public only three times a month and that he often has anxiety attacks when he goes to the grocery store. Tr. 53–54.

Finally, even assuming Plaintiff is capable of the modest activities cited above, the Ninth Circuit has consistently held such a minimal level of activity is not sufficient to reject a claimant's testimony. *See Vertigan*, 260 F.3d at 1050 ("This Court has repeatedly asserted that the mere fact that a Plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.") (quoting *Fair v. Bowen,* 885 F.2d 597,603 (9th Cir. 1989)). The Commissioner's reliance on Plaintiff's limited daily activities was therefore insufficient to reject his testimony.

In sum, the ALJ failed to provide clear and convincing reasons for rejecting the Plaintiff's Subjective Symptom Testimony.

## IV.    Remand

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176–78 (9th Cir. 2000). In determining whether to remand for further proceedings or for an award of benefits,

the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Here, Plaintiff concedes that remand for additional proceedings is the appropriate remedy. The Court agrees because the record here is not fully developed. Significantly, because the ALJ excluded Dr. Freed's questionnaire in its entirety from the record the Court is unable to conclude that crediting that erroneously rejected evidence would require a finding of disability.

Accordingly, the Court remands this case on an open record to: (1) admit the questionnaire portion of Dr. Freed's psychological evaluation into the evidence; (2) reevaluate Plaintiff's subjective symptom testimony; (3) reevaluate the medical opinion evidence; (4) obtain additional VE testimony based on a reformulated RFC; and (5) conduct any further necessary proceedings.

**CONCLUSION**

For the reasons discussed above, the Commissioner's decision was not based on substantial evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this <u>14th</u> day of March 2023.

<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge